UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

M.R.S. ENTERPRISES, INC.                     )
      Plaintiff                              )
                               )
v.                                           )
                               )    C.A. NO. 05-40163-FDS
                               )
                               )
SHEET METAL WORKERS' INTERNATIONAL           )
ASSOCIATION LOCAL 63, AFL-CIO                )
      Defendants                             )

M.R.S. ENTERPRISES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>

By its Attorney,

DATED:  April 25, 2006

        /s/ *James F. Grosso*
James F. Grosso – BBO 213320
O'Reilly, Grosso & Gross, P.C.
1671 Worcester Road, Suite 205
Framingham, MA 01701-5400
Tel:  508/620-0055
Fax:  508/620-7655

## TABLE OF CONTENTS

SUBJECT                                                                                    PAGE NO.

Table of Authorities ...................................................................................................... ii

Introduction ................................................................................................................. 1

Summary of the Argument ............................................................................................ 2

    There was Evident Partiality of the Arbitrators ................................................... 2
    The Arbitrators Exceeded Their Authority in Issuing  a Monetary Award ....................... 2

Statement of Undisputed Facts ...................................................................................... 3

Argument ...................................................................................................................... 5

    There was Evident Partiality of the Arbitrators ................................................... 5
    The Arbitrators Exceeded Their Authority in Issuing  a Monetary Award ....................... 7

Conclusion .................................................................................................................... 10

TABLE OF AUTHORITIES

SUBJECT                                                                                    PAGE NO.

CASES

Commonwealth Coatings Corp. v. Continental Casualty Company, 393 US 145 (1968) ...... 2, 5, 6

Crow Construction Company v. Jeffery M. Brown Associates, Inc., 264 Fd. Supp.
2d 217, 220 (2003) ........................................................................................................... 6

Morelite Construction Corp. v. New York City District Council of Carpenters Benefit Funds,
748 Fd. 2d  79, 81 (2d Cir. 1984) .................................................................................... 6

Pitta v. Hotel Association of New York City Inc., 806 Fd. 2d 419, 424 Note 2 (1986) ................ 5

University Overland Express Inc. and Robert H. Connor, 29 NLRB 82, 90 (1960) ...................... 5

In Re Armstrong Air Conditioning and United Autoworkers International Union, Local 1623,
99 Lab. Arb. Rep. (BNA) 540 (1992) ............................................................................... 8

In Re Barko Hydraulics, LLC and International Brotherhood of Boilermakers, Local Lodge 117,
119 Lab. Arb. Rep. (BNA) 77 (2004) ............................................................................... 9

In Re Curry Transfer and Storage Company and International Brotherhood of Teamsters
Local 175, 112 Lab. Arb. Rep. (BNA) 866 (1999) .......................................................... 8

In Re Homer Electric Association, and International Brotherhood of Electrical Workers
Local 1547, 119 Lab. Arb. Rep. (BNA) 525 (2004) ........................................................ 8

In Re Levernier Construction Inc. and Local 528, Operative Plasterers and Cement Masons
International Association, 113 L.A. (BNA) 152 (1999) .............................................. 3, 8

In Re Matanuska Electric Association Inc. and International Brotherhood of Electrical Workers
Local 1547, 111 Lab. Arb. Rep. (BNA) 596 (1998) ........................................................ 8

Blacks Law Dictionary ............................................................................................................... 5

How Arbitration Works, by Elkouri and Elkouri, 6th Edition, Chapter 4.9.C, p. 182 (2003) ......... 5

## STATUTES

Federal Arbitration Act, 9 USC, §10(b) ........................................................................... 2, 6

National Labor Relations Act, 29 U.S.C. §185 .................................................................. 3

## RULES

Federal Rules of Civil Procedure Rule 56 ....................................................................... 10

Revised Uniform Arbitration Act, 7 RUAA §23(a)(2) (2000) ....................................... 2, 6

INTRODUCTION

M.R.S. Enterprises, Inc. (M.R.S.) was signatory to an international collective bargaining agreement with the Sheet Metal Workers' International Association (SMWIA) known as the National Siding and Decking Agreement (the Agreement).   M.R.S. was not signatory to a collective bargaining agreement with the Sheet Metal Workers' International Association Local 63 (Local 63) located in Worcester, Massachusetts.

M.R.S. was involved in a construction project in Worcester, Massachusetts at the University of Massachusetts Hospital.   The project involved the installation of metal panel siding.   In early 2005, a dispute arose between M.R.S. and Local 63 on the University of Massachusetts Hospital project.   Local 63 filed a grievance against M.R.S. claiming a violation of the Agreement as a result of the assignment of the installation of metal panel siding by M.R.S. to the International Association of Bridge, Structural and Ornamental Iron Workers Local 7. M.R.S. was required to use ironworker as a condition of its subcontract with Permasteelisa. But more importantly, Local 63 could not supply M.R.S. with skilled sheet metal specialty workers who could perform the work.

On July 19, 2005, the Siding and Decking Arbitration Board, (the Arbitration Board) established through the Agreement, heard the Local 63 dispute and on August 19, 2005, the Arbitration Board awarded Local 63 $175,276.09 in lost wages and benefits for work hours performed by the iron workers on the University of Massachusetts Hospital project.  (A copy of that decision is attached hereto as Exhibit A.)  M.R.S. filed suit in this District to vacate the award on September 15, 2005 and filed its First Amended Complaint on March 6, 2006.  M.R.S. now moves for Summary Judgment seeking an order of the Court vacating the arbitration award.

SUMMARY OF THE ARGUMENT

**There was Evident Partiality of the Arbitrators**

The Siding and Decking Arbitration Board (the Arbitration Board) is comprised of equal numbers of representatives of employers and equal numbers of representatives of the SMWIA. The Arbitration Board, therefore, consisted of two union representatives and two competitors of M.R.S. who sat in judgment on whether or not M.R.S. violated the collective bargaining agreement by doing the work with ironworkers.

The Federal Arbitration Act, 9 U.S.C., §10(b) permits the vacation of an arbitration award on the basis of evident partiality of the arbitrator. The United States Supreme Court in Commonwealth Coatings Corp. v. Continental Casualty Company, 393 US 145 (1968), held that an arbitration award could be vacated if there is "evident partiality" of the arbitrator. The Revised Uniform Arbitration Act, 7 RUAA, §23(a)(2) (2000) provides that there is a presumption of evident partiality when a neutral arbitrator fails to disclose, "A known, direct and material interest in the outcome or a known, existing, and substantial relationship with a party."

There was evident partiality in the arbitrator's appointed by the SMWIA in this case because of their substantial relationship with the Business Manager for Local 63, all of whom are members of the SMWIA and those two arbitrators had a direct interest in the outcome of the arbitration.

**The Arbitrators Exceeded Their Authority in Issuing a Monetary Award**

The purpose of a monetary remedy is to reimburse union members who have suffered financial damages as a direct result of an employer's wrongful violation of a labor agreement. It is not intended to extend payment to anyone who has not suffered any monetary loss nor is it

intended to enrich any individual through payment beyond that which is justified by actual losses. In re: <u>Levernier Construction Inc. and Local 528, Operative Plasterers and Cement Masons International Association</u>, 113 Lab. Arb. Rep. (BNA) 152 (1999) The arbitrators exceeded their authority when they issued a monetary award to Local 63 where the evidence presented to the arbitrators was clear that Local 63 had no sheet metal specialty workers available to refer to M.R.S. to perform the work that was performed by the iron worker employees of M.R.S. Since Local 63 had no sheet metal specialty workers to refer to M.R.S., no Local 63 members suffered financial damages as a result of the employer's assignment of the work to the iron workers. If the award of damages is allowed to stand, it will enrich individuals in Local 63 through payment that is beyond that which is justified by actual losses.

STATEMENT OF UNDISPUTED FACTS

1.      M.R.S. Enterprises, Inc. (M.R.S.) is a corporation duly organized and existing by virtue of the laws of the State of Connecticut with a principal place of business in Plainville, Connecticut. (First Amended Complaint ¶1; Answer of the Defendant to the First Amended Complaint ¶1)

2.      The Defendant, Sheet Metal Workers' International Association Local 63 (Local 63) is a labor organization within the meaning of the National Labor Relations Act, 29 U.S.C. §185 et seq. with a principal place of business in Worcester, Massachusetts. (First Amended Complaint ¶5; Answer of the Defendant to the First Amended Complaint ¶5)

3.      M.R.S. was signatory to a collective bargaining agreement with the Sheet Metal Workers' International Association (SMWIA) known as the National Siding and Decking Agreement (the Agreement). (First Amended Complaint ¶6; Answer of the Defendant to the First Amended Complaint ¶6)

3

4.     Pursuant to the Agreement, M.R.S. is permitted to perform siding and decking work utilizing sheet metal specialty workers from locals in every state including Massachusetts.  (First Amended Complaint ¶7; Answer of the Defendant to the First Amended Complaint ¶7)

5.     M.R.S. was involved in a construction project at the University of Massachusetts Hospital in Worcester, Massachusetts.  The M.R.S. subcontract on that project involved the installation of metal panel siding.  (First Amended Complaint ¶9; Answer of the Defendant to the First Amended Complaint ¶9)

6.     In early 2005, a dispute arose between M.R.S. and Local 63 regarding the assignment by M.R.S. of the installation of the metal panel siding to its employees represented by Iron Workers Local 7.  (First Amended Complaint ¶10; Answer of the Defendant to the First Amended Complaint ¶10 in part)

7.     Local 63 filed a contractual grievance against M.R.S., claiming a violation of the Agreement as a result of the assignment of some of the disputed work to its iron worker employees.  (First Amended Complaint ¶11; Answer of the Defendant to First Amended Complaint¶11)

8.     A hearing was held before the Siding and Decking Arbitration Board appointed by the SMWIA and the National Siding and Decking Association (NSDA) on July 18, 2005 in Southfield, Michigan.  (First Amended Complaint ¶12; Answer of the Defendant to the First Amended Complaint ¶12)

9.     On February 15, 2006, the Siding and Decking Arbitration Board awarded Local 63 $175,276.09 in lost wages and benefits.  (First Amended Complaint ¶15; Answer of the Defendant to the First Amended Complaint ¶15 in part)

10.    The Siding and Decking Arbitration Board is comprised of an equal number of employer representatives and an equal number of union representatives as provided in Article X of the collective bargaining agreement to which M.R.S. and Local 63 were bound.  (Answer of the Defendant to First Amended Complaint ¶16)

ARGUMENT

**There was Evident Partiality of the Arbitrators**

The Siding and Decking Arbitration Board (the Arbitration Board) is comprised of equal numbers of representatives of employers who are signatory to an agreement with the SMWIA and union representatives appointed by the President of the SMWIA.  The Arbitration Board in this case consisted of H. Dean Ball and Brad L. Plueger, two representatives appointed by the SMWIA and Richard Pellar of Crown Corr Inc. and JoLaine Boudart, coincidentally the sister of Richard Pellar, from CCL Construction.  The Arbitration Board consisted of two union representatives and two competitors of M.R.S. who sat in judgment on whether or not M.R.S. violated the collective bargaining agreement by doing work with a crew of ironworkers.

_Blacks Law Dictionary_ defines arbitrator as ". . . a _private, disinterested person_, chosen by the parties to a disputed question, for the purpose of hearing their contention and giving judgment between them."  See University Overland Express Inc. and Robert H. Connor, 29 NLRB 82, 90 (1960).   The leading treatise, _How Arbitration Works_, by Elkouri and Elkouri, 6th Edition, Chapter 4.9.C, p. 182 (2003) states that "_No qualification is more important than that of impartiality.  It may well be that no person can be absolutely free from bias or prejudice of any kind, but it is not too much to expect an arbitrator to be able to put aside any personal inclinations and stand between the parties with an open mind.''._  The United States Supreme Court in Commonwealth Coatings Corp., supra, and the Second Circuit Court in Pitta v. Hotel

5

Association of New York City Inc., 806 Fd. 2d 419, 424 Note 2 (1986), have held that an arbitration award may be vacated if there is "evident partiality" of the arbitrator.  The Federal Arbitration Act, 9 USC, §10(b) provides that evident partiality of the arbitrator may be met by inferences from objective facts inconsistent with impartiality.  In the case of Crow Construction Company v. Jeffery M. Brown Associates, Inc., 264 Fd. Supp. 2d 217, 220 (2003), the Court held that "Congress vested the Federal Courts with the power to vacate an arbitration award where there was evident partiality in the arbitrators."  The Revised Uniform Arbitration Act, 7 RUAA, §23(a)(2) (2000) provides that there is a presumption of evident partiality when a neutral arbitrator fails to disclose, "A known, direct, and material interest in the outcome or a known, existing, and substantial relationship with a party."

In this case, there is clearly a substantial relationship between the two members of the Arbitration Board appointed by the SMWIA and the Business Manager for Local 63, if for no other reason than that the three are brothers in the same union.  Similarly, both union representatives on the Arbitration Board had a direct and material interest in the outcome of the arbitration because a finding that M.R.S. had violated the collective bargaining agreement would result in an award of monetary damages to other brothers and sisters in SMWIA Local 63.  Since M.R.S. performed part of the metal panel siding work with union iron workers, a competing building trade union, there was further incentive for the SMWIA representatives on the Arbitration Board to find a violation of the collective bargaining agreement by M.R.S.

The Supreme Court of the United States addressed this in its decision in Commonwealth Coatings Corp, supra, when Justice Black wrote in the four Justice plurality opinion that undisclosed "dealings that might create an impression of possible bias" or "even an appearance of bias" would amount to evident partiality.  Id @ 149.  In the case of Morelite Construction

<u>Corp. v. New York City District Council of Carpenters Benefit Funds</u>, 748 Fd. 2d 79, 81 (2d Cir. 1984), the Second Circuit Court of Appeals defined "evident partiality" to mean "Where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  In that case, a father-son relationship existed between an arbitrator and an officer of the International Carpenters Union to which the New York City District Council belonged.  The Second Circuit held that in the absence of evidence of estrangement between the arbitrator and his father, a presumption of filial loyalty satisfied the standard of evident partiality required for vacating the arbitration award.  Even though the son had nothing to do with the arbitration, was not present during the arbitration hearings and had no involvement in the dispute between Morelite Construction Corp. and the New York City Council of Carpenters Benefit Funds, the Second Circuit Court of Appeals believed there was enough of an appearance of evident partiality to require vacating the award.  In this case, while we do not have a filial relationship between the Arbitration Board and the Business Manager for Local 63, there is clearly a relationship between the representatives appointed by the SMWIA and the Business Manager of Local 63, also a member of SMWIA.

**The Arbitrators Exceeded Their Authority in Issuing a Monetary Award**

In this case, the, Business Manager for Local 63, admitted in a response to a question from one of the employer association appointed arbitrators that he had no sheet metal specialty workers available in Local 63 to refer to M.R.S.  (See Affidavit of Roland O. Levesque Sr. attached hereto as Exhibit B.)  Arbitrators have long held and Courts have confirmed that "The purpose of a monetary remedy--such as the union has proposed in this case -- is to reimburse those union members, if any, who have suffered financial damages as a direct result of an employer's wrongful violation of a Labor Agreement.  It is not intended to extend payment to

anyone who has not suffered any monetary loss, nor is it intended to enrich any individual through payment beyond that which is justified by actual losses." In re: Levernier Construction Inc., supra, Arbitrator Landau held in In re: Matanuska Electric Association Inc. and International Brotherhood of Electrical Workers Local 1547, 111 Lab. Arb. Rep. (BNA) 596 (1998) that the "Union is not entitled to remedy for employer's violation of a collective-bargaining agreement in assigning design work on non-construction work projects to design engineer, who is supervisor, when none of senior engineering technicians who may have been affected by design engineer's work were laid off or suffered any reduction in normal work hours;" and in In re: Armstrong Air Conditioning and United Autoworkers International Union, Local 1623, 99 Lab. Arb. Rep. (BNA) 540 (1992) Arbitrator Harlan held that "Any employee who was not available for work cannot reasonably be considered to be entitled to back pay for that period of time."

Even in cases where the arbitrator has awarded back pay including wages and benefits, arbitrators have not permitted back pay awards where the employee was not available for work during the entire period of the absence. For example in In re: Curry Transfer and Storage Company and International Brotherhood of Teamsters Local 175, 112 Lab. Arb. Rep. (BNA) 866 (1999) Arbitrator Harlan, held that "The grievant is entitled to be made whole for all wages, to include overtime, from July 28, 1998 through September 6, 1998. Mr. Cunningham had a heart attack September 7, 1998 and was under a doctor's care. He was released and returned to work November 23, 1998. He was not physically able to work Sept. 7-Nov. 22, 1998. As such, he is not eligible for back pay for that period of time. See also In re: Homer Electric Association, and International Brotherhood of Electrical Workers Local 1547, 119 Lab. Arb. Rep. (BNA) 525 (2004) where Arbitrator Lumbley held that "Wrongfully-discharged employee is not entitled to

back pay at working foreman's wage except for two months, even though award reinstating him stated that he should be returned to his 'former position' where his crew was disbanded two months after his discharge and the employer reduced its complement of working foremen."  And finally, in In re: <u>Barko Hydraulics, LLC and International Brotherhood of Boilermakers, Local Lodge 117</u>, 119 Lab. Arb. Rep. (BNA) 77 (2004) Arbitrator O'Grady held that "Reinstated employee is not entitled to any back pay . . . where employee did not make reasonable efforts to mitigate his damages."  In that case, the discharged employee did nothing to obtain work during the period of his discharge and therefore the arbitrators did not award him any back pay.

In this case, there was no evidence presented at the arbitration on July 18, 2005 to establish that Local 63 had any sheet metal specialty workers available to refer to M.R.S. for the University of Massachusetts Hospital project.  In fact, according to the Affidavit of Roland O. Levesque Sr., the Business Manager for Local 63 admitted he had no skilled employees and the only sheet metal specialty workers who worked on the project were longtime employees of M.R.S. who belonged to Sheet Metal Workers Local 40.  Although the Business Manager entered into evidence the number of hours worked by the iron worker employees of M.R.S., as the measure of damages for alleged lost work opportunities by members of Local 63, he could not provide the names of those members who actually lost work opportunities because of the assignment by M.R.S. to its iron worker employees.  One must assume, therefore, that if M.R.S. is ordered to pay the damages found by the Arbitration Board to Local 63, that money will go into the general treasury of Local 63 and will not be allocated to any of the Local's members. This is exactly the type of penalty award that neutral arbitrators refuse to make.

<u>CONCLUSION</u>

For the reasons stated above, M.R.S. respectfully requests that this Court issue summary judgment for it pursuant to Federal Rules of Civil Procedure Rule 56 vacating the arbitration award issued by the National Siding and Decking Arbitration Board on August 19, 2005.

M.R.S. ENTERPRISES, INC.
By its Attorney Pro Hac Vice,


DATED:  April 25, 2006                                  /s/ *James F. Grosso*
                                                        James F. Grosso – phv0680
                                                        O'Reilly, Grosso & Gross, P.C.
                                                        1671 Worcester Road, Suite 205
                                                        Framingham, MA 01701-5400
                                                        Tel:  508/620-0055
                                                        Fax:  508/620-7655

**EXHIBIT A**

NATIONAL SIDING AND DECKING AGREEMENT
SIDING AND DECICING AR BITRATION BOARD
MINUTES AND DECISION

Location:
25800 Northwestern Highway, Ste. 1000
Southfield, Michigan 48075

SHEET METAL WORKERS LOCAL NO. 38
and
MRS ENTERPRISES
Filed:
August 2, 2004 and August 16, 2004

SHEET METAL WORKERS LOCAL NO. 63
and
MRS ENTERPRISES
Filed:
July 19, 2004

MONDAY, JULY 18,2005

Present for the Employer:    Roland Levesque, Sr., MRS Enterprises

Present for the Union:    John Tarr, Business Representative, SMW1A Local 38
Mark Andrews, Business Representative, SMW1A Local 63

Arbitration Board:    H. Dean Ball, SMWIA International Representative
Brad L. Plueger, SMWIA International Representative
Richard Pellar, Crown Corr, Inc.
Jolaine Boudart, CCL Construction

Others Present:    Cynthia J. Billings, National Siding and Decking Association
Rich McClees, SMWIA

SMWIA LOCAL 38 AND MRS ENTERPRISES

The Hearing commenced at 12:16 p.m. The members of the Arbitration Board appointed Richard Pellar Chairman, Brad Plueger Secretary and Cynthia Billings recording secretary. All parties agreed that the procedural aspects of the grievance have been satisfi.ed.

Mr. Tarr presented the case for Local 38 alleging that MRS Enterprises violated its collective bargaining agreement by employing carpenters to perform sheet metal work at the Greenwich Hospital project 'in Greenwich, Connecticut and further, by employing carpenters to perform sheet metal work on the Unilever project in Trumbull, Connecticut. Mr. Tarr presented a schedule of hours to the Arbitration Board which provided that between July 26, 2004 and August 13, 2004, MRS Enterprises awarded 392 man hours of metal siding work to carpenters.

Mr. Levesque stated that on both the Greenwich and the Unilever jobs, MRS had a combination of sheet metal workers, carpenters, and iron workers. He stated that the carpenters have taken over the industry in New England and, as such, he is not able to compete using either iron workers or sheet metal workers. Mr. Levesque also stated that the siding and decking training program never got off the ground and, as such, all siding and decking employees that he hired he had to hire off the street and train himself.

Mr. Levesque stated that the sheet metal workers wage and fringe package was approximately 30% higher than that of the carpenters. At this time, Mr. Levesque presented a wage sheet for the Sheet Metal Workers Local 38 dated July 1, 2003 through June 30, 2004 showing a total package of $52.49 per hour. He also presented a wage sheet for the Central Connecticut Carpenters, Millwrights and Pile Drivers, Locals 24, 43, and 210 for the time period May 5, 2003 through May 2, 2004 showing a total package of $35.40 per hour.

Mr. Levesque also presented a written schedule to the Arbitration Board setting forth the man hours for the Greenwich project - 339 hours iron workers, 1,339 hours sheet metal workers, and 1,584 hours for carpenters.

With respect to the Unilever project, Mr. Tarr presented a written schedule to the Arbitration Board showing that the carpenters were awarded work that fell under the Siding and Decking Agreement totaling 1,632 man hours.

Mr. Levesque presented a written schedule to the Arbitration Board setting forth the man hours for the Unilever project showing that the carpenters were employed 3,458 hours, sheet metal workers were employed 2,673 hours and iron workers were employed 381 hours. He stated again, that the sheet metal rate was $52.49 vs. the carpenter rate of $35.40. He also confirmed that neither Greenwich or Unilever were prevailing wage jobs.

At this time, Mr. Levesque asked for clarification as to whether or not Mr. McClees was on the Arbitration Board. Chairman Pellar stated that originally there were to be six panelists, three for management and three for the union, however, one of management's panelists was unable to attend the hearing. As such, it was agreed that there would be a total of four panelists and that Mr. McClees would not have a vote in this matter. Chairman Pellar advised Mr. Levesque that if he would prefer, Mr. McClees would be excused from the hearing and all of his comments would be stricken from the record. Mr. Levesque stated that that was not necessary.

At this time, Mr. Tarr was excused from the meeting and Mr. Andrews was invited in. Mr. Andrews stated that he filed a grievance against MRS for hiring iron workers to perform siding and decking work at the U-Mass Hospital in Worcester, Massachusetts. Mr. Levesque

explained that the job involved the installation of siding (rib panels) and some framing. Mr. Levesque also stated that his contract with Permasteelisa required that iron workers be hired for the project. Mr. Levesque referred to paragraph 23 of his contract with Permasteelisa which provides:

23. Should questions of jurisdiction arise, the Contractor shall immediately take steps to settle such disputes and will use such labor as may be determined to have jurisdiction, at no additional costs to the Owner or Construction Manager. Contractor will be responsible for time lost and monetary damages because of delays arising from such disputes. ALL LABOR JURISDICTION DISPUTES WILL BE SETTLED WITH LOCAL UNION NO. 57 AT NO ADDITIONAL COST TO THE OWNER.

Mr. Levesque explained that Local Union No. 57 is the iron worker local.

There was discussion with respect to the above-referenced paragraph and paragraph 22 which provides as follows:

22. All work furnished and installed by or through this Contractor shall be fabricated and installed using only experienced labor having jurisdiction. This Contractor shall advise the Construction Manager immediately of any labor disputes experienced or anticipated. It is understood that MRS Enterprises, Inc. has the sole responsibility to assign this contract work and the assignment of work will be to the carpenters. It is also noted that this assignment of work cannot result in the project being shut down due to labor disputes. MRS will provide an alternate to provide a composite crew with Carpenters and Ironworkers.

Mr. Ball asked if there were any other writings that would require iron workers on this job. Again, Mr. Levesque referred him to paragraph 23 of the Permasteelisa contract. In addition, Mr. Levesque stated that he believes there may have been some reference in the bid documents that also required iron workers. Mr. Levesque stated that the project was put out to bid twice and as such he was having difficulty remembering whether it was the first bid request, the second bid request, or both that required iron workers.

Chairman Pellar stated for the record that NMS had rescinded the siding and decking contract and asked if MRS was signatory to any other national or local. union contracts. Mr. Levesque stated that MRS was sign atory to the Ironworkers International Agreement and the Carpenters local agreement. Mr. Levesque also stated that NMS was no longer signatory to any sheet metal agreements. Mr. Andrews stated that MRS' signatory status with the Sheet Metal Workers was in dispute.          -

There being no further questions, the parties were excused from the hearing at 1: 10 p.m. The Arbitration Board reconvened at 1: 15 p.m.

DECISION OF ARBITRATION BOARD

Local 38 Grievances

A.      Greenwich Project

The Arbitration Board first considered whether or not MRS violated the National Siding and Decking Agreement by using carpenters rather than sheet metal workers on the Greenwich project. There was discussion over Mr. Levesque's comments that he did, in fact, hire carpenters based on the fact that their total package was 30% less than the total package for sheet metal workers. After discussion, there was unanimous agreement that MRS violated the National Siding and Decking Agreement on the Greenwich project,

B.      Unilever Project

After discussion, and based on the fact that NMS admitted that they used carpenters due to the 30% difference in the total package, it was unanimously determined that MRS violated the National Siding and Decking Agreement.

Monetary Award

Greenwich project. The Arbitration Board considered that Mr. Levesque reported that he had 1,584 hours for carpenters on his payroll, however, because the union only grieved 392 hours, the Arbitration Board determined that the monetary award would be based on 392 man hours and that, further, it would be based on the wage package for sheet metal workers as submitted by Mr. Levesque totaling $52.49 per hour. Total damages on the Greenwich project were determined to be $20,576.08 (392 hrs. x $52.49).

Unilever project. The Arbitration Board considered that Mr. Levesque reported that he had 3,458 hours for carpenters on his payroll, however, because the union only grieved 1,632 hours, the Arbitration Board determined that the monetary award would be based on 1,632 man hours and that, further, it would be based on the wage package for sheet metal workers as submitted by Mr. Levesque totaling $52.49 per hour. Total damages on the Unilever project were determined to be $85,663.68 (1,632 hrs. x $52.49).

Local 63 Grievance - U-Mass Hospital

The Board first discussed whether or not MRS violated the National Siding and Decking Agreement. There was discussion with respect to the fact that MRS' contract with Permasteelisa required carpenters and not iron workers, and the fact that there was a contradiction between Mr. Levesque's testimony and the actual contract. Specifically, the contract gave MRS sole responsibility to assign the work to the carpenters, yet Mr. Levesque testified that he assigned the work to the iron workers.

**EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| M.R.S. ENTERPRISES, INC. | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. NO. 05-40163-FDS |
| | ) | |
| SHEET METAL WORKERS' INTERNATIONAL | ) | |
| ASSOCIATION LOCAL 63, AFL-CIO | ) | |
|     Defendants | ) | |

AFFIDAVIT OF
ROLAND O. LEVESQUE SR., PRESIDENT
<u>M.R.S. ENTERPRISES, INC.</u>

I, Roland O. Levesque Sr., upon oath hereby affirm and state as follows:

1.    I am President of M.R.S. Enterprises, Inc. (M.R.S.) of Plainville, Connecticut and have worked for the Company for 20 years. I have personal knowledge of all of the facts contained in this affidavit and can competently testify to the contents of this affidavit if called as a witness.

2.    M.R.S. was signatory to a collective bargaining agreement with the Sheet Metal Workers' International Association (SMWIA) referred to as the National Siding and Decking Agreement (the Agreement). M.R.S. was signatory to the agreement through the National Association of Siding and Decking Contractors (NASDC).

3.    Pursuant to the Agreement, M.R.S. is permitted to perform siding and decking work utilizing Sheet Metal Workers from locals in every state including Massachusetts.

4.      M.R.S. was involved in a construction project at the University of Massachusetts Hospital in Worcester, Massachusetts.  The M.R.S. subcontract on that project involved the installation of metal panel siding.  M.R.S.'s work on this project is considered the installation of a metal panel siding system.

5.      The project at Worcester, Massachusetts was within the geographic jurisdiction of Sheet Metal Workers' International Association Local 63 (Local 63).

6.      In early 2005, a dispute arose on the University of Massachusetts project between M.R.S. and Local 63 when  M.R.S. assigned the installation of metal panel siding to employees represented by both Local 63 and Iron Workers.

7      M.R.S. also has a collective bargaining agreement with the International Association of Bridge, Structural and Ornamental Iron Workers Local No. 57

8.      Local 63 filed a contractual grievance against M.R.S. claiming a violation of the Agreement as a result of the assignment of the disputed work to Iron Workers.

9.       A hearing was held before the Siding and Decking Arbitration Board appointed by the SMWIA and the NASDC on July 19, 2005 in Southfield, Michigan.

10.     The hearing also included grievances filed by Sheet Metal Workers' International Association Local 38 (Local 38) from Brewster, New York over two disputes that arose on the Greenwich Hospital in Greenwich, CT and at the Unilever project of M.R.S. in Trumbull, CT.

11.     Richard Pellar and his sister, Jolaine Boudart were appointed by NASDC as the Association representatives on the Siding and Decking Arbitration Board.  That Board heard the grievances of both Local 63 and Local 38.

12.     During the course of the hearing, Mr. Pellar asked the representatives of Local 63 and Local 38 if they had any trained Sheet Metal Workers known as specialty workers who could

perform the siding work.  The response from the representatives of both Locals was no. In fact, neither Local 38 nor Local 63 have any specialty workers in their respective memberships. The only Sheet Metal Worker local that had any specialty workers in its membership was Local 40 in Connecticut and all of those were employees of M.R.S. who became members of Local 40. All of those members have since resigned from Local 40 and are now members of the Ironworkers' union.

13.    During the presentation of the M.R.S. case, I stated to the Siding and Decking Arbitration Board members that there were no trained Sheet Metal Specialty Workers in Local 63 who could perform siding work and that the only skilled Sheet Metal Specialty Workers in Connecticut were employees of M.R.S. who were placed into Local 40 when M.R.S. executed the NSDC Agreement.

14.    M.R.S. was forced to use its ironworkers employees to perform the work because of its contract with Permasteelisa, the supplier of the siding, and the fact that Local 63 could not supply it with skilled Sheet Metal Workers who could perform siding work.  Any men who were referred by Local 63 were used as material handlers because they had no skills in the installation of metal panel siding.

15.    Despite the fact that the representatives of Local 63 and Local 38 admitted to the Siding and Decking Arbitration Board that neither local had skilled Sheet Metal Specialty Workers to refer to M.R.S., the Siding and Decking Arbitration Board issued its decision on August 19, 2005 awarding to Local 63, $175,276.09 in lost wages and benefits on the University of Massachusetts Hospital project.

16.    The work jurisdictional claims of Local 63 contained in its collective bargaining agreement do not include the installation of light gauge metal framing support systems or

composition metal panel siding. In addition, therefore, to not having qualified specialty Sheet Metal Workers to refer to M.R.S. on the two projects in Connecticut, Local 63's collective bargaining agreement does not include that work as being covered by the collective bargaining agreement.

17.    At the time M.R.S. performed the work on the University of Massachusetts Hospital project there were no members of Local 63 who lost work opportunities and who could have worked on those two projects.

18.    Since there were no members of Local 63 available and competent to perform the work, and there were no lost work opportunities to any members of Local 63, the Siding and Decking Arbitration Board decision awarding monetary damages for lost wages and benefits is erroneous and the Arbitrators exceeded their authority in issuing such an award.

Sworn to by me under the penalties of perjury this 20th day of April, 2006.


_____*Roland O. Levesque, Sr.*_____
Roland O. Levesque Sr., President
M.R.S. Enterprises, Inc.