`UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M.R.S. ENTERPRISES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. NO. 05-40163-FDS |
| ) | |
| SHEET METAL WORKERS' INTERNATIONAL ) | |
| ASOSCIATION LOCAL 63, AFL-CIO, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT LOCAL 63's COMBINED MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Sheet Metal Workers International Association Local Union No. 63 respectfully submits this memorandum in support of its cross-motion for summary judgment and in opposition to the motion for summary judgment filed by plaintiff M.R.S. Enterprises, Inc.

**PRELMINARY STATEMENT**

This an action under Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, by plaintiff M.R.S. Enterprises, Inc. to vacate and a counterclaim by defendant Local 63 to enforce a labor arbitration award that was issued pursuant to the grievance and arbitration provisions of a collective bargaining agreement. Defendant has submitted a separate statement of undisputed material facts in accordance with Local Rule 56.1, but the facts may be summarized as follows.

The arbitration award issued in this case arose from a grievance filed by Local 63 claiming that M.R.S. had violated their collective bargaining agreement by failing to hire sheet metal workers to perform certain work on a construction project in Worcester, Massachusetts. The collective bargaining agreement provides for "final and binding" arbitration by a Joint

Arbitration Board consisting of equal numbers of representatives of the two parties that negotiated the agreement, the Sheet Metal Workers International Association and the National Siding and Decking Contractors Association. The Arbitration Board conducted two days of hearings, the first on July 18, 2005 and the second, devoted to the question of damages, on November 15, 2005. The Arbitration Board found in favor of the Union on liability after the first day of hearings in a July 19 decision, and in favor of the Union on damages after the second day of hearings in a February 15, 2006 Award of $175,276.09, payable not to the Union's general fund, but to the retirement, health, training and other fringe benefit funds.

      M.R.S. now sues to vacate the award claiming (1) that the Union-appointed members of the Arbitration Board were members of the Union and therefore were biased, and (2) that there was no evidentiary basis for an award of damages. At the first day of hearings, however, M.R.S.'s owner, Roland Levesque, Sr., made no objection to the participation of the Union members of the Arbitration Board and, at the second day of hearings on the question of damages, the Employer did not even attend. The employer association that negotiated the collective bargaining agreement and that appointed two representatives to the Arbitration Board forwarded the Union's evidence concerning damages to M.R.S., but received no response.

      M.R.S. has refused to comply with the Arbitration Board's Award and has sued to vacate the Award. Local 63 has counter-claimed to enforce it. In accordance with a scheduling order issued in this case, M.R.S has moved for summary judgment, and Local 63 now opposes M.R.S.'s motion and cross-moves for summary judgment.

## ARGUMENT

      The fundamental problem with M.R.S.'s action to vacate is that M.R.S. had every opportunity to raise all the arguments that it is raising now in this Court back when it was before

the Arbitration Board. M.R.S., however, undeniably failed to do so. In fact, M.R.S. did not even bother to show up at all at the second day of hearings devoted to the issue of damages. Under well-established principles of federal law governing labor arbitration awards, a party that fails to raise these kinds of arguments at the arbitration hearing itself waives them, and it cannot undermine the federal policies promoting arbitration of labor disputes by raising for the first time in an action in federal court to vacate an award arguments that it never made to the arbitration tribunal itself. In any event, M.R.S.'s arguments on the merits are utterly meritless. Finally, Local 63 is entitled to recover its attorneys' fees both as a matter of contract under the express terms of the grievance and arbitration provision of the parties' collective bargaining agreement and, even in the absence of that contractual basis, under principles of federal law governing enforcement of labor arbitration awards.

I.      **FEDERAL LABOR LAW DICTATES A VERY NARROW STANDARD OF REVIEW OF LABOR ARBITRATION AWARDS**

Judicial review of labor arbitration awards is exceptionally limited. While Section 301 of the Labor Management Relations Act vests federal courts with jurisdiction of claims to enforce collective bargaining agreements, 29 U.S.C. § 185, most labor agreements provide for arbitration as an alternative to federal litigation on the merits of contract grievances. Most arbitration provisions in labor agreements, like the one at issue in this case (Andrews Decl., Exh. A at p. 24-25), provide that the arbitration award shall be "final and binding," a formulation that does not contemplate relitigating the merits of the grievance in another forum or even appealing the merits of the award.

More than 40 years ago, in a series of cases issued the same day on the subject of labor arbitration, *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960);

3

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960), the Supreme Court went to great lengths to define and narrowly circumscribe the role of the courts under Section 301 in addressing the merits of grievances that are subject to arbitration under labor agreements. As the Court noted in *Warrior & Gulf*,

> The present federal policy is to promote industrial stabilization through the collective bargaining agreement. … A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement.

363 U.S. at 578. The Court explained that the "federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Enterprise Wheel*, 363 U.S. at 596.

The Supreme Court more recently had occasion to reiterate and elaborate on the extremely narrow scope of judicial review of labor arbitration awards under Section 301 in *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29 (1987). The Court in *Misco* stressed that "the courts play only a limited role when asked to review the decision of an arbitrator." 484 U.S. at 36. The Court declared the limits of this role in no uncertain terms:

> The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on *errors of fact* or on *misinterpretation of the contract*.

484 U.S. at 36 (emphasis added). The Court again emphasized: "that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision." 484 U.S. at 38. Accordingly, M.R.S.'s claims in this case must be analyzed in the context of this extremely narrow standard of review.

One final note before turning to the merits of M.R.S.'s claims. M.R.S. suggests that the Federal Arbitration Act, 9 U.S.C. §1, et seq., governs this case. M.R.S., however, itself brought this case not under the Federal Arbitration Act, but under Section 301 of the Labor Management

4

Relations Act, 29 U.S.C. § 185. (First Amended Complaint, ¶4). The Supreme Court declared long ago that Section 301 is not merely a jurisdictional statute, but that it authorizes the federal courts to fashion a body of *substantive* federal law to apply to suits involving the enforcement of labor agreements. *See Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 456-57 (1957). The Supreme Court in *Misco* noted that the Federal Arbitration Act does not apply to labor agreements governed by Section 301. 484 U.S. at 40 n.9. Accordingly, the body of substantive law developed by the courts in litigation under Section 301 involving labor arbitration awards, and not the Federal Arbitration Act, governs this action.

II.     **M.R.S. WAIVED ANY ARGUMENT OF BIAS AND, IN ANY EVENT, ITS ARGUMENT IS BASELESS**

M.R.S. first claims that the Arbitration Board was biased because the Union-appointed board members were members of the same international union with which Local 63 is affiliated. M.R.S., however, as noted above, failed to mention that objection during the arbitration hearing. The First Circuit in unambiguous terms has held that the "accepted rule in arbitration cases" is that "we will not entertain a claim of personal bias where it could have been but was not raised at the hearing to which it applies." *Early v. Eastern Transfer*, 699 F.2d 552, 558 (1st Cir. 1983), *cert. denied,* 464 U.S. 824 (1983). In *JCI Communications, Inc. v. International Brotherhood of Electrical Workers Local 103*, 324 F.3d 42, 52 (1st Cir. 2003), the First Circuit reached precisely the same conclusion again when it found that the employer had "waived the claim" of bias by failing to raise it at the hearing.

Moreover, the First Circuit held in equally clear terms in *JCI Communications* that the nature of the "bias" that M.R.S. alleges in this case cannot invalidate a joint arbitration board's award. 324 F.3d at 52. In order to appreciate that holding, it is important first to appreciate the nature of joint board arbitration in the overall context of labor arbitration.

5

Labor arbitration often takes the form of a single neutral arbitrator selected by the parties or appointed by an arbitration service such as the American Arbitration Association. Sometimes it takes the form of a so-called "tri-partite" panel consisting of one union-designated member, one employer-designated member, and a neutral arbitrator. In the case of such three-member panels, of course, the neutral plays the central role.

Joint Boards are very different in nature, however, because they generally consist of equal numbers of union and employer representatives, and there is no role for a neutral arbitrator. Indeed, in the case of joint boards, the whole concept of a "neutral" arbitrator is entirely inapplicable. Instead, the decision makers *by definition* are representatives of the parties to the collective bargaining agreements themselves. Such joint boards do not operate under any pretense of "neutrality." Instead, they must either reach a decision by consensus or deadlock.

Accordingly, to say that a joint board is biased against the employer because the union-designated members of the board are union members is to attack the fundamental premise of the joint board. But an arbitration panel without a neutral is precisely what the parties to labor agreements intend when they call for final and binding arbitration of grievances by joint boards. That is precisely and expressly what the parties to the National Siding and Decking Agreement intended when they negotiated the agreement involved in this case, and that is precisely the nature of the arbitration panel to which M.R.S. in express terms agreed to subject itself when it agreed to be bound by the Agreement. To observe that the union-designated members of the joint board here were union members not only states the obvious, but it describes the very nature of the joint board to which M.R.S. *expressly agreed* to submit grievances.

Treating arbitration awards issued by joints boards the same for enforcement purposes under Section 301 as any other arbitration award is entirely consistent with federal labor law.

That law expressly endorses arbitration, not by a neutral or any other particular means, but "[f]inal adjustment *by a method agreed upon by the parties.*" 29 U.S.C. § 173(d)(emphasis added). As a result, despite the fundamental differences from arbitration by neutral arbitrators, courts uniformly recognize the validity of this "method" of alternative dispute resolution when the parties to a collective bargaining agreement negotiate it and, for judicial enforcement purposes, courts treat joint board awards the same as any other labor arbitration award. *See, e.g., United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56 (1981)(decision of joint arbitration board with no neutral treated as ordinary arbitration for purposes of Section 301); *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., Inc.*, 372 U.S. 517, 791 (1963)("if the award [of a joint board] is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under §301"); *Early v. Eastern Transfer*, 699 F.2d 552 (1st Cir. 1982)(joint board with no neutral treated as ordinary arbitration proceeding), *cert. denied,* 464 U.S. 824 (1983).

      The inescapable import of these decisions is that the mere fact that the members of joint arbitration boards are not "neutral" does not mean that they are "biased," at least not in the sense necessary to invalidate the award under federal labor law. That is precisely what the First Circuit recently held in *JCI Communications*. That case actually involved perhaps a more compelling argument for bias, but the First Circuit nevertheless held that the fact that the employer-designated joint board members were owners of businesses in the same industry as the employer with the case before the board and therefore were potential business competitors of the employer did not constitute bias:

> The mere fact that the panel included business rivals of one party does not rise to the level of evident partiality.

*JCI Communications*, 324 F.3d at 52.  M.R.S. has offered no authority whatever holding or even suggesting that a joint board award is invalid merely because the joint board members were members of the appointing union, and there are none of which Local 63 is aware from this or any other jurisdiction.

In its brief, M.R.S. cites *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968) and *Crow Construction Co. v. Jeffery M. Brown Assoc. Inc.* 264 F.Supp. 2d 217, 200 (E.D. Pa. 2003), both of which involve ordinary commercial arbitration and do not present the special issues of federal labor policy the Supreme Court has held must guide the review of labor arbitration awards under Section 301.  Similarly, *Morlite Construction Corp. v. New York City Dist. Council of Carpenters Benefits Funds*, 748 F.2d 79 (2d Cir. 1984), did not involve a grievance under a collective bargaining agreement but a claim by various fringe benefit funds concerning delinquent contributions.  Moreover, the evident partiality the court found in that case involved a single neutral arbitrator, rather than a joint board, where the neutral arbitrator was the son of the affiliated union's president.  Even M.R.S. concedes that no such evident partiality is present here.

The only labor arbitration case under Section 301 that M.R.S. cites is *Pitta v. Hotel Association of New York City*, 806 F.2d 419 (2d Cir. 1986) which, again, involved a neutral arbitrator and not a joint board.  The court in *Pitta* disqualified the arbitrator from ruling on the question of the validity of his *own dismissal* as permanent arbitrator of disputes under the collective bargaining agreement due, of course, to his obvious personal and direct financial stake in the outcome.  M.R.S. alleges nothing even remotely similar here.

Finally, while not necessarily dispositive of the legal issue, it is worth noting that the Joint Board's award against M.R.S. in this case was by the *unanimous* decision of all four Board

8

members, including both of the management-side members of the board. M.R.S. surely is in no position to attack the award on the basis of bias by the union-side members, when even the management-side board members voted to sustain the Union's grievance and to issue an award of damages. M.R.S.'s claim of bias is patently frivolous both as a matter of law and of fact.

### III.   M.R.S. WAIVED ANY ARGUMENT CONCERNING DAMAGES BY FAILING TO ATTEND THE HEARING ON DAMAGES AND, IN ANY EVENT, ITS ARGUMENT IS BASELESS

M.R.S.'s argument about damages is even more outrageous than its claim of bias because M.R.S. did not even bother to show up at the hearing devoted to the issue of damages. If a party to labor arbitration waives an argument by not raising it during the hearing, the party surely waives the argument by not even attending the hearing at all. Yet, that is exactly what M.R.S. did here.

The Arbitration Board bifurcated the hearing and, after the first day, issued an award addressing just the issue of liability. The Board expressly provided in its initial award that it would hold another day of hearings devoted to the issue of damages in the event the parties could not resolve the issue on their own. The parties were unable to do so, and the Union presented evidence in support of its case on damages. That evidence was forwarded to M.R.S., but M.R.S. did not respond. The Board held a second day of hearings on the issue of damages, at which M.R.S. did not attend. The Board's decision expressly notes that the employer association actually forwarded the Union's evidence to M.R.S. for comment, but received "no response from M.R.S." (Andrews Decl., Exh. C at 2). The only cases that M.R.S. cites for its damages argument in this Court are decisions by *arbitrators* – something that only confirms that M.R.S. could have and should have raised that argument during the Board's second day of hearings devoted to the issue of damages. Having failed even to *appear*, not to mention address the issue

9

of damages, in the forum that the Arbitration Board designated for that very purpose, M.R.S. is foreclosed from raising *any* issue concerning damages now.

In an apparent effort to avoid this obvious problem, M.R.S. characterizes its challenge to the Arbitration Board's award on damages as one concerning the Board's "authority."  But questions of an arbitrator's "authority" or "powers" within meaning of 9.U.S.C. §10(a)(4), even assuming that provision governed this case, "focus[] on whether the arbitrator[] had the power based on the parties' submission or arbitration agreement to *reach* a certain issue, not whether the arbitrator[] *correctly decided* that issue."  *Banco de Seguros del Estado v. Mutual Marine Office, Inc.* 344 F.3d 255, 262 (2d Cir. 2003)(emphasis added).  M.R.S., however, does not and cannot contend that the Arbitration Board lacked the power or authority to "reach" the question of damages or remedy if it found a contract violation.  Instead, M.R.S. only argues that the facts do not justify or support an award of damages.

At bottom, then, M.R.S.'s "authority" argument is simply an evidentiary argument -- that the *record* does not support a factual finding sufficient to justify an award of damages.  The Supreme Court in *Misco,* however, made it abundantly clear that the limited role of reviewing courts applies not just to the arbitrator's interpretation of the contract terms, but to the arbitrator's view of the factual record, to his findings of fact, and to his fashioning of a remedy:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's *view of the facts* and of the meaning of the contract that they have agreed to accept.  Courts thus do not sit to hear claims of *factual* or legal *error* by an arbitrator as an appellate court does in reviewing decisions of lower courts.  To resolve disputes about the application of a collective bargaining agreement, *an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.* … So, too, where it is contemplated that the arbitrator will *determine remedies* for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect.

*Misco*, 484 U.S. at 37-38(emphasis added).

M.R.S. is essentially arguing before this Court that the Arbitration Board got it wrong in awarding damages because, in M.R.S's view, the record did not support such an award.  As a result of the Supreme Court's repeated commands, however, this Court is prohibited from addressing that argument, regardless of its "merits."

In any event, Local 63 disputes M.R.S.'s allegation that the Union conceded during the first day of hearings that it has no members capable of performing the work at issue, and it affirmatively alleges that it not only has them but that it has members who have performed similar work in the past. (Andrews Decl., ¶2-5).  The Union's evidence on this point at the very least forecloses M.R.S.'s motion for summary judgment.  It would be particularly offensive, however, to permit this dispute of fact to foreclose Local 63's motion for summary judgment as well.  M.R.S., by choosing not to attend the hearing on damages, effectively defaulted on that issue.  To provide M.R.S. with any further opportunity to make some kind of case on the question of damages, after it chose not even to *appear* at the Arbitration Board's hearing on the question of damages, would grossly undermine the federal policy of promoting arbitration as a quick, informal, and inexpensive means of resolving labor disputes and would make a mockery of M.R.S.'s agreement to "final and binding" arbitration by the Board that issued the Award in this case.  In view of M.R.S.'s waiver of any issue concerning the remedy, the dispute of fact on this point is not a dispute concerning a "material" fact.

Before leaving this issue, it should be noted that M.R.S. claims that the damages award will simply "go into the general treasury of Local 63…." (M.R.S. Br.at 9).  The Arbitration Board's Award, however, expressly directs that the award be made not to the Union but to the retirement, health, training and other fringe benefit funds. (Andrews Decl., Exh. C at 2).

IV.   **M.R.S. MUST BE SANCTIONED FOR ITS FRIVOLOUS ACTION TO VACATE THE AWARD, BOTH AS A MATTER OF CONTRACT AND OF LAW**

Notwithstanding the "American Rule" that ordinarily requires each party to bear its own costs and attorneys' fees in litigation, Local 63 is entitled to attorneys fees for two entirely independent reasons.

### A. The Parties' Collective Bargaining Agreement Mandates An Award of Attorneys' Fees

The National Siding and Decking Agreement expressly provides that parties prevailing in actions to judicially enforce arbitration board awards "shall be" entitled to their costs and attorneys' fees as part of the judgment in the litigation:

> If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorneys' fees *in addition to such relief as is directed by the courts.*

(Andrews Decl., Exh. A at 25)(emphasis added).  Accordingly, Local 63 is entitled to an award of costs and attorneys' fees in addition to judicial enforcement of the Arbitration Board's Award in this case.

### B.   The First Circuit Requires an Award of Attorneys' Fees When a Party Refuses to Comply With a Labor Arbitration Award Without Justification

Even in the absence of contractual basis for an award of attorneys fees in this case, Local 63 would be entitled to such an award under well-settled case law in this circuit.  In *Crafts Precision Industries, Inc. v. Lodge No. 1836 of District 38, IAM*, 889 F.2d 1184, 1186 (1st Cir. 1989), then Judge Breyer warned that parties refusing to comply with labor arbitration awards "without justification" face an award of attorneys' fees.  In *Local 285, Service Employees International Union v. Nonotuck Resource Associates, Inc.*, 64 F.3d 735, 737-38, 742 (1st Cir. 1995), the First Circuit reversed a district court's decision not to award attorneys' fees as an abuse of discretion.

12

There can be no doubt that M.R.S.'s refusal to comply with the Arbitration Board's Award in this case is "without justification." M.R.S. relies in this Court on arguments that it never made before the Arbitration Board and that, as a result, it waived under the clearly-stated law of this circuit. In fact, M.R.S. did not even bother to attend the hearing on damages and effectively defaulted on that entire issue. There is no justification whatever for M.R.S.'s refusal to comply with the Arbitration Board's Award here, and Local 63 is entitled to recover its costs and attorneys' fees. *See also Painters District Council No. 35 v. Coating Systems, Inc*, 161 LRRM (BNA) 2240, 1997 WL 1109311 (D. Mass. 1997); *Local 285, Service Employees International Union v. Parnash Inc.*, 2000 WL 341053 (D. Mass. 2000).

## CONCLUSION

For the foregoing reasons, M.R.S.'s motion for summary judgment should be denied and Local 63's cross-motion for summary judgment should be granted. Local 63 proposes that it be given thirty days following entry of the Court's order on the cross-motions for summary judgment within which to file an affidavit in support of the amount of costs and attorneys fees it claims.

Dated: June 1, 2006                              Respectfully submitted,

                                                 Christopher N. Souris
                                                 BBO #556343
                                                 KRAKOW & SOURIS LLC
                                                 225 Friend Street
                                                 Boston, MA 02114
                                                 (617) 723-8440


                                                 /s/ Christopher N. Souris_____
                                                 Attorney for defendant

13

CERTIFICATE OF SERVICE

    I, Christopher N. Souris, hereby certify that I caused a copy of the foregoing to be mailed this date to James F. Grosso, O'Reilly, Grosso & Gross, 1671 Worcester Road, Suite 205, Framingham, MA 01701-5400

                                              /s/ Christopher N. Souris
                                              Christopher N. Souris