UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M.R.S. ENTERPRISES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. NO. 05-40163-FDS ) |
| SHEET METAL WORKERS' INTERNATIONAL ASOSCIATION LOCAL 63, AFL-CIO, | ) ) ) |
| Defendant. | ) ) ) |

**DECLARATION OF MARK W. ANDREWS**

Mark W. Andrews under penalties of perjury, hereby declares upon personal knowledge as follows:

1. I am employed as a Business Representative of Sheet Metal Workers' International Association Local Union No. 63, and I attended the hearings on behalf of Local 63 before the Siding and Decking Arbitration Board on July 18 and November 15, 2005.

2. I dispute the account of the July 18 hearing and other matters set forth in paragraphs 12 through 18 of the Affidavit of Rolando Levesque, Sr.

3. During the July 18 hearing, Arbitration Board member Richard Pellar asked me if Local 63 had qualified workers who could perform the siding work on the M.R.S. project in Worcester.

4. Before I could respond, M.R.S.'s owner, Roland Levesque, Sr., interrupted and told Mr. Pellar that the issue with Local 63's grievance did not have anything to do with the qualifications of Local 63's membership but, rather, M.R.S. was required by its subcontract for the work on the project to use ironworkers and not sheet metal workers.

5. Neither I nor Mr. Levesque ever said at the July 18 hearing that Local 63 has no members qualified to perform the work; in fact, the work falls within Local 63's trade jurisdiction, and Local 63 does have members who are qualified to perform the work and who have performed similar work in the past.

6. Prior to using others to perform the work on the Worcester project, M.R.S. never asked Local 63 if it had members who were qualified to perform the work and, in fact, Mr. Levesque told me prior to the commencement of work on the project that he was going to use ironworkers and not sheet metal workers because his subcontract for the work on the project required him to use ironworkers.

7. At the November 15 hearing on damages, I attended and presented evidence in support of Local 63's claim for damages in connection with its grievance.

8. Neither Mr. Levesque nor any other representative of M.R.S. attended the November 15 hearing on damages or, to my knowledge, otherwise submitted any evidence or argument to the Arbitration Board on the question of damages.

9. Excerpts of the National Siding and Decking Agreement to which the parties were bound are attached as Exhibit A.

10. A copy of the Arbitration Board's July 19, 2005 Award is attached as Exhibit B, and a copy of its February 15, 2006 Award is attached as Exhibit C.

11. To date, M.R.S. has failed to make any payment due under the February 15, 2006 Arbitration Board award.

I declare under penalties of perjury and upon personal knowledge that the foregoing is true and correct this 31st day of May, 2006.

*Mark W. Andrews*
Mark W. Andrews

## CERTIFICATE OF SERVICE

    I, Christopher N. Souris, hereby certify that I caused a copy of the foregoing to be mailed this date to James F. Grosso, O'Reilly, Grosso & Gross, 1671 Worcester Road, Suite 205, Framingham, MA 01701-5400

_____
Christopher N. Souris

# **Exhibit A**

# NATIONAL SIDING AND DECKING AGREEMENT

## NATIONAL ASSOCIATION OF SIDING AND DECKING CONTRACTORS
## AND
## SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION AFL-CIO

Agreement entered into this 1st day of June 2000, by and between the National Association of Siding and Decking Contractors (NASDC) and the Sheet Metal Workers' International Association (SMWIA or Union).

### ARTICLE I

**SECTION 1.** This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in job site fabrication, handling, erection, installation, dismantling, conditioning, adjustment, alterations, repairing and servicing of all ferrous or nonferrous metal work and all other material used in lieu thereof of those items set forth in Section 2 of this Article. The provisions of this contract shall govern the performance of such work in any geographic area, including any area within the jurisdiction of any local union affiliated with SMWIA.

The Employer further agrees that the operating of any equipment or new technology which has as its essential purpose replacing or changing those jobs or procedures traditionally performed by sheet metal workers, and all other sheet metal work, will be covered by this Agreement and considered to be the jurisdictional claims of the Sheet Metal Workers' International Association.

1

(b) The Employer will contribute to the Sheet Metal Occupational Health Institute, Inc. Trust Fund Two ($0.02) Cents per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the twentieth (20th) day of the succeeding month and shall be remitted as designated by the Trustees of the Fund, or for purposes of collection and transmittal through Sheet Metal Workers' National Benefit Funds, P.O. Box 14176, Ben Franklin Postal Station, Washington, DC 20044.

### ARTICLE IX

**SECTION 1.** All employees covered by this Agreement shall provide for themselves all necessary hand tools.

**SECTION 2.** All employees covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and his or her personal tools.

### ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article. The grievance procedures of the National Siding and Decking Agreement are the sole and exclusive remedy for any asserted breaches of this Agreement and supersede the grievance procedures of any other collective bargaining agreement that the Employer is signatory.

**SECTION 1. Step 1.** Grievances of the Employer or the Union, arising out of the interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved

and the duly authorized representative of the Union; if possible. Both parties may participate in conferences through representatives of their choice.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

**SECTION 2.** Step 2. Grievances not disposed of under the procedure described in Section 1 of this Article may be appealed jointly or by either party to the Siding and Decking Grievance Panel ("Grievance Panel") Duplicate copies of the appeal shall be mailed to the following addresses: Siding and Decking Grievance Panel, 25800 Northwestern Highway, Suite 1000, Southfield, Michigan 48075 and Sheet Metal Workers International Association Jurisdictional Department, 1750 New York Avenue, NW, Washington, D.C. 20006. The Grievance Panel shall be composed of two (2) members, one (1) of which shall be appointed by the General President of the Sheet Metal Workers International Association and one (1) of which shall be appointed by the National Association of Siding and Decking Contractors. Both sides shall have equal voting power. The Grievance Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Grievance Panel.

The Grievance Panel is empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation. Except in the case of deadlock, the decision of the Grievance Panel shall be final and binding.

**SECTION 3.** Step 3. Grievances not settled as provided in Section 2 of this Article may be appealed jointly or by either

party to the Siding and Decking Arbitration Board ("Arbitration Board"). The Arbitration Board shall consist of three (3) members appointed by the Union and three (3) members appointed by the Association. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the Arbitration Board shall be submitted within thirty (30) days after termination of the procedures described in Section 2 of this Article. The decision of the Arbitration Board shall be final and binding.

**SECTION 4.** In the event of a non-compliance within thirty (30) calendar days following the mailing of a decision of the Siding and Decking Grievance Panel or the Siding and Decking Arbitration Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such relief as is directed by the courts.

**SECTION 5.** Failure to exercise the right of appeal at any step thereof within the time limit provided therefor shall void any right of appeal applicable to the facts and remedies of the grievances involved. There shall be no cessation of work by strike or lockout while the procedures provided for in this Article are pending. Except in case of deadlock, the decision of the Siding and Decking Arbitration Board shall be final and binding.

## ARTICLE XI

Where the Employer is required to furnish safety equipment the employee shall sign a statement to the effect that he has received the equipment and that he will return the equipment when he finishes the job.

jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect. The parties agree to meet and negotiate a substitute provision.

**SECTION 3.** Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement, or during the terms of any extension, modification or amendment to this Agreement.

**SECTION 4.** Employers bound by this Agreement shall include those which have executed a written authorization which designates the Association to act as that Employer's collective bargaining representative for all matters relating to this Agreement. Such Employer shall hereafter be bound by any subsequent modification, renewal or renegotiation of this Agreement by said Association, unless the Employer withdraws its authorization by written notice to that Association, as well as the Union and such notice is received by the Association and the Union, at least one hundred and fifty (150) days prior to the current expiration date of this Agreement.

**In witness whereof**, the parties hereto affix their signatures and seal this 10th day of January, 2001.

| National Association of Siding and Decking Contractors | Sheet Metal Workers' International Association |
|---|---|
| By: *Richard Pellar* | By: *Michael Sullivan* |
| Richard Pellar, President | Michael Sullivan, General President |

27

**Exhibit B**

NATIONAL SIDING AND DECKING AGREEMENT
SIDING AND DECKING ARBITRATION BOARD
MINUTES AND DECISION

Location:
25800 Northwestern Highway, Ste. 1000
Southfield, Michigan 48075

SHEET METAL WORKERS LOCAL NO. 38
and
MRS ENTERPRISES
Filed:
August 2, 2004 and August 16, 2004

SHEET METAL WORKERS LOCAL NO. 63
and
MRS ENTERPRISES
Filed:
July 19, 2004

MONDAY, JULY 18, 2005

| | |
|---|---|
| Present for the Employer: | Roland Levesque, Sr., MRS Enterprises |
| Present for the Union: | John Tarr, Business Representative, SMWIA Local 38<br>Mark Andrews, Business Representative, SMWIA Local 63 |
| Arbitration Board: | H. Dean Ball, SMWIA International Representative<br>Brad L. Plueger, SMWIA International Representative<br>Richard Pellar, Crown Corr, Inc.<br>Jolaine Boudart, CCL Construction |
| Others Present: | Cynthia J. Billings, National Siding and Decking Association<br>Rich McClees, SMWIA |

## SMWIA LOCAL 38 AND MRS ENTERPRISES

The Hearing commenced at 12:16 p.m. The members of the Arbitration Board appointed Richard Pellar Chairman, Brad Plueger Secretary and Cynthia Billings recording secretary. All parties agreed that the procedural aspects of the grievance have been satisfied.

Mr. Tarr presented the case for Local 38 alleging that MRS Enterprises violated its collective bargaining agreement by employing carpenters to perform sheet metal work at the Greenwich Hospital project in Greenwich, Connecticut and further, by employing carpenters to perform sheet metal work on the Unilever project in Trumbull, Connecticut. Mr. Tarr presented

- 1 -

a schedule of hours to the Arbitration Board which provided that between July 26, 2004 and August 13, 2004, MRS Enterprises awarded 392 man hours of metal siding work to carpenters.

Mr. Levesque stated that on both the Greenwich and the Unilever jobs, MRS had a combination of sheet metal workers, carpenters, and iron workers. He stated that the carpenters have taken over the industry in New England and, as such, he is not able to compete using either iron workers or sheet metal workers. Mr. Levesque also stated that the siding and decking training program never got off the ground and, as such, all siding and decking employees that he hired he had to hire off the street and train himself.

Mr. Levesque stated that the sheet metal workers wage and fringe package was approximately 30% higher than that of the carpenters. At this time, Mr. Levesque presented a wage sheet for the Sheet Metal Workers Local 38 dated July 1, 2003 through June 30, 2004 showing a total package of $52.49 per hour. He also presented a wage sheet for the Central Connecticut Carpenters, Millwrights and Pile Drivers, Locals 24, 43, and 210 for the time period May 5, 2003 through May 2, 2004 showing a total package of $35.40 per hour.

Mr. Levesque also presented a written schedule to the Arbitration Board setting forth the man hours for the Greenwich project - 339 hours iron workers, 1,339 hours sheet metal workers, and 1,584 hours for carpenters.

With respect to the Unilever project, Mr. Tarr presented a written schedule to the Arbitration Board showing that the carpenters were awarded work that fell under the Siding and Decking Agreement totaling 1,632 man hours.

Mr. Levesque presented a written schedule to the Arbitration Board setting forth the man hours for the Unilever project showing that the carpenters were employed 3,458 hours, sheet metal workers were employed 2,673 hours and iron workers were employed 381 hours. He stated again, that the sheet metal rate was $52.49 vs. the carpenter rate of $35.40. He also confirmed that neither Greenwich or Unilever were prevailing wage jobs.

At this time, Mr. Levesque asked for clarification as to whether or not Mr. McClees was on the Arbitration Board. Chairman Pellar stated that originally there were to be six panelists, three for management and three for the union, however, one of management's panelists was unable to attend the hearing. As such, it was agreed that there would be a total of four panelists and that Mr. McClees would not have a vote in this matter. Chairman Pellar advised Mr. Levesque that if he would prefer, Mr. McClees would be excused from the hearing and all of his comments would be stricken from the record. Mr. Levesque stated that that was not necessary.

At this time, Mr. Tarr was excused from the meeting and Mr. Andrews was invited in. Mr. Andrews stated that he filed a grievance against MRS for hiring iron workers to perform siding and decking work at the U-Mass Hospital in Worchester, Massachusetts. Mr. Levesque explained that the job involved the installation of siding (rib panels) and some framing. Mr. Levesque also stated that his contract with Permasteelisa required that iron workers be hired for the project. Mr. Levesque referred to paragraph 23 of his contract with Permasteelisa which provides:

> 23. Should questions of jurisdiction arise, the Contractor shall immediately take steps to settle such disputes and will use such labor as may be determined to have jurisdiction, at no additional costs to the Owner or Construction Manager. Contractor will be responsible for time lost and monetary damages because of delays arising from such disputes. **ALL LABOR JURISDICTION DISPUTES WILL BE SETTLED WITH LOCAL UNION NO. 57 AT NO ADDITIONAL COST TO THE OWNER.**

Mr. Levesque explained that Local Union No. 57 is the iron worker local.

There was discussion with respect to the above-referenced paragraph and paragraph 22 which provides as follows:

> 22. All work furnished and installed by or through this Contractor shall be fabricated and installed using only experienced labor having jurisdiction. This Contractor shall advise the Construction Manager immediately of any labor disputes experienced or anticipated. It is understood that MRS Enterprises, Inc. has the sole responsibility to assign this contract work and the assignment of work will be to the carpenters. It is also noted that this assignment of work cannot result in the project being shut down due to labor disputes. MRS will provide an alternate to provide a composite crew with Carpenters and Ironworkers.

Mr. Ball asked if there were any other writings that would require iron workers on this job. Again, Mr. Levesque referred him to paragraph 23 of the Permasteelisa contract. In addition, Mr. Levesque stated that he believes there may have been some reference in the bid documents that also required iron workers. Mr. Levesque stated that the project was put out to bid twice and as such he was having difficulty remembering whether it was the first bid request, the second bid request, or both that required iron workers.

Chairman Pellar stated for the record that MRS had rescinded the siding and decking contract and asked if MRS was signatory to any other national or local union contracts. Mr. Levesque stated that MRS was signatory to the Ironworkers International Agreement and the Carpenters local agreement. Mr. Levesque also stated that MRS was no longer signatory to any sheet metal agreements. Mr. Andrews stated that MRS' signatory status with the Sheet Metal Workers was in dispute.

There being no further questions, the parties were excused from the hearing at 1:10 p.m. The Arbitration Board reconvened at 1:15 p.m.

## DECISION OF ARBITRATION BOARD

### Local 38 Grievances

#### A.   Greenwich Project

The Arbitration Board first considered whether or not MRS violated the National Siding and Decking Agreement by using carpenters rather than sheet metal workers on the Greenwich project. There was discussion over Mr. Levesque's comments that he did, in fact, hire carpenters based on the fact that their total package was 30% less than the total package for sheet metal workers. After discussion, there was unanimous agreement that MRS violated the National Siding and Decking Agreement on the Greenwich project.

#### B.   Unilever Project

After discussion, and based on the fact that MRS admitted that they used carpenters due to the 30% difference in the total package, it was unanimously determined that MRS violated the National Siding and Decking Agreement.

### Monetary Award

Greenwich project. The Arbitration Board considered that Mr. Levesque reported that he had 1,584 hours for carpenters on his payroll, however, because the union only grieved 392 hours, the Arbitration Board determined that the monetary award would be based on 392 man hours and that, further, it would be based on the wage package for sheet metal workers as submitted by Mr. Levesque totaling $52.49 per hour. Total damages on the Greenwich project were determined to be $20,576.08 (392 hrs. x $52.49).

Unilever project. The Arbitration Board considered that Mr. Levesque reported that he had 3,458 hours for carpenters on his payroll, however, because the union only grieved 1,632 hours, the Arbitration Board determined that the monetary award would be based on 1,632 man hours and that, further, it would be based on the wage package for sheet metal workers as submitted by Mr. Levesque totaling $52.49 per hour. Total damages on the Unilever project were determined to be $85,663.68 (1,632 hrs. x $52.49).

### Local 63 Grievance - U-Mass Hospital

The Board first discussed whether or not MRS violated the National Siding and Decking Agreement. There was discussion with respect to the fact that MRS' contract with Permasteelisa required carpenters and not iron workers, and the fact that there was a contradiction between Mr. Levesque's testimony and the actual contract. Specifically, the contract gave MRS sole responsibility to assign the work to the carpenters, yet Mr. Levesque testified that he assigned the work to the iron workers.

After careful consideration, it was determined that MRS Enterprises violated the National Siding and Decking Agreement by hiring iron workers rather than Sheet Metal Workers to perform siding and decking work at the U-Mass Hospital project.

Monetary award. As no man hours were submitted by either the local or Mr. Levesque concerning this project, the Arbitration Board determined that it will retain jurisdiction of this matter to allow the parties to work out damages. If the parties are not able to resolve damages within 60 days from the date specified below, they are each required to submit a position statement to the Arbitration Board and a hearing will be held with respect to this matter.

This matter concluded at 2:09 p.m.

Dated: August 19, 2005

_Richard Pellar_ w/ permission
Richard Pellar

_Jolaine Boudart_ w/ permission
Jolaine Boudart

_Brad Plueger_ w/ permission
Brad Plueger

_H. Dean Ball_ w/ permission
H. Dean Ball

W0417695/a29/52400/min

- 5 -

# **<u>Exhibit C</u>**

NATIONAL SIDING AND DECKING AGREEMENT
SIDING AND DECKING ARBITRATION BOARD
MINUTES AND DECISION

Location:
25800 Northwestern Highway, Ste. 1000
Southfield, Michigan 48075

SHEET METAL WORKERS LOCAL NO. 63
and
MRS ENTERPRISES
Filed:
July 19, 2004

NOVEMBER 15, 2005

| | |
|---|---|
| Present for the Employer: | None |
| Present for the Union: | Mark Andrews, Business Representative, SMWIA Local 63 |
| Arbitration Board: | H. Dean Ball, SMWIA International Representative<br>Brad L. Plueger, SMWIA International Representative<br>Richard Pellar, Crown Corr, Inc.<br>Jolaine Boudart, CCL Construction |
| Others Present: | Rich McClees, SMWIA<br>Anthony A. Asher, National Association of Siding<br>  & Decking Contractors |

The hearing commenced at 10:00 a.m. The members of the Arbitration Board appointed Richard Pellar Chairman, Brad Plueger Secretary and Anthony Asher Recording Secretary. All parties agreed that the procedural aspects of the grievance had been satisfied.

There was discussion concerning the grievance hearing held on Monday, July 18, 2005, wherein the Arbitration Board heard evidence from representatives from Local 63 and MRS Enterprises and eventually ruled that MRS Enterprises violated the National Siding & Decking Agreement by hiring Ironworkers rather than Sheet Metal Workers to perform Siding and Decking work at the U-A Mass Hospital project. As no man hours were submitted by either Local 63 or MRS Enterprises concerning this project, the Arbitration Board had determined that it would retain jurisdiction to allow the parties to work out the damages. If the parties were unable to resolve damages within sixty (60) days from the date of decision, August 18, 2005, a subsequent hearing would be held concerning the issue of damages.

At this time, Mr. Andrews stated that the parties had been unable to resolve damages. Mr. Andrews presented certified payroll records and requested damages based on 5,819 man hours as of May 31, 2005. It was noted that the payroll records had been forwarded to MRS Enterprises by the National Siding & Decking Association on September 21, 2005 for comment; however, the Association had no response from MRS Enterprises regarding same. The Board of Trustees then considered the applicable hourly rate under the Siding & Decking Agreement and determined that between August 23, 2004 and December 31, 2004, damages would be based on 2,299 hours, multiplied by $29.71 per hour, for a total of $68,303.29 in damages. In addition, damages between January 1, 2005 and May 31, 2005 would be determined based on 3,520 hours, multiplied by $30.39, for a total of $106,972.80, for a total award of $175,276.09.

MRS Enterprises is hereby ordered to immediately remit $175,276.09 to the fringe benefit funds, payable pro-rata, pursuant to the collective bargaining agreement.

This matter concluded at 11:10 a.m.

Dated: February 15, 2006

_Richard Pellar (w/permission)_
Richard Pellar

_Brad Plueger (w/permission)_
Brad Plueger

_Jolaine Boudart (w/permission)_
Jolaine Boudart

_H. Dean Ball (w/permission)_
H. Dean Ball

W0451436

- 2 -