```
 1                    UNITED STATES DISTRICT COURT

 2                      DISTRICT OF CONNECTICUT

 3
     * * * * * * * * * * *  *Civil Docket
 4                          *     No. 3:05CV1466(MRK)
     MRS ENTERPRISES INC.,  *
 5             Plaintiff    *
                            * June 5, 2006
 6        vs.               * 2:05 o'clock p.m.
                            *
 7   SHEET METAL WORKERS INTL ASSN, *
     LOCAL 38 ET AL,        *
 8             Defendant    *
                            *
 9   * * * * * * * * * * *  *New Haven, Connecticut

10
                           ORAL ARGUMENT
11

12         BEFORE THE HONORABLE MARK R. KRAVITZ
               UNITED STATES DISTRICT JUDGE
13   Appearances:
     For the Plaintiff:     JAMES F. GROSSO, ESQ.
14                          O'Reilly Grosso and Grosso P.C.
                            167 Worcester Road Suite 205
15                          Framington, MA 01701-5400

16

17   For the Defendant:     JOHN T. FUSSELL, ESQ.
                            Robert M. Cheverie & Associates P.C.
18                          333 East River Drive Suite 101
                            East Hartford CT 06108-4206
19

20
     Court Reporter:        Thea Finkelstein RMR, CRR
21                          141 Church Street
                            New Haven, CT 06510
22                          203.777.3487

23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by computer.
```

1          THE COURT: Good afternoon, everyone. We are here
2  today in MRS Enterprises Inc versus Sheet Metal Workers
3  International Local 38, 05CV1466. Could I get the appearances
4  of counsel for the record and could they introduce anyone
5  seated with them?
6          MR. GROSSO: Good afternoon, your Honor. I'm James
7  Grosso. I'm here pro hac vice and I'm here for the plaintiff
8  MRS Enterprises.
9          MR. FUSSELL: Good afternoon, your Honor. I'm John
10 Fussell, here with Robert Cheverie & Associates for Sheet
11 Metal Workers International Local 38.
12         THE COURT: Welcome. I've read your briefs, read
13 the cases you've cited, your attachments as well. The way I
14 like to do oral argument is basically proceed with kind of
15 questions and then if you feel like you want to say something
16 that we haven't discussed, I'll give you all the time that you
17 want afterwards.
18         I think, Mr. Grosso, I should begin with you. As I
19 understand it, you essentially make two claims for why I
20 should set aside the ruling: The first being a partiality on
21 at least of the two arbitrators, somehow affiliated with the
22 union, is that correct?
23         MR. GROSSO: That's correct, your Honor.
24         THE COURT: And the other is the arbitrators
25 exceeded their powers, right?

```
 1              MR. GROSSO:  Yes, your Honor.
 2              THE COURT:  As to the first, do you agree that you
 3   never questioned the impartiality of the arbitrators below?
 4              MR. GROSSO:  I was not represent --
 5              THE COURT:  Not you personally.
 6              MR. GROSSO:  My client, that's correct.  The record,
 7   what little record we have, since there was no stenographer,
 8   apparently from the colloquy that went back and forth between
 9   my client and the arbitrators, he did not raise that issue.
10              THE COURT:  Okay.  Would you agree with your
11   opponent, therefore, having not raised it below, you've waived
12   it?
13              MR. GROSSO:  I wouldn't agree that it's waived, your
14   Honor.  I think that if the -- I mean, my client is a lay
15   person.  He didn't know to save his rights.  He should have
16   raised it.  He has no legal training.  The fact remains --
17              THE COURT:  Never did a grievance or arbitration
18   before in his life, huh?
19              MR. GROSSO:  I can't say that.
20              THE COURT:  He has a couple of others with reported
21   decisions on?
22              MR. GROSSO:  That decision, I represented him on,
23   that was Washington, D.C., two different issues.  That was
24   termination of a contract.
25              THE COURT:  All I'm saying is I'm not sure how far
```

1  the babe in the woods defense will go with someone here but
2  particularly since -- I mean, what are the arbitrators to do?
3  The reason they have this rule is so they can make alternate
4  arrangements or they get a new arbitrator but to go through
5  the whole hearing and then raise partiality afterwards is
6  wasteful, if nothing else.
7              MR. GROSSO:  The problem, your Honor, is the way the
8  system is structured, there is no alternative.  You will just
9  get two different people, two different employer appointees or
10 two different union employees, but you will still have two
11 people who come from the Sheet Metals International and two
12 from the employers.  You can't get an impartial.
13             THE COURT:  Because he signed the agreement, right?
14             MR. GROSSO:  Yes, he did.
15             THE COURT:  As a result of an agreement that your
16 client entered into freely and voluntarily, he agreed that two
17 people will come from the union and now he comes here and
18 says, this is just bad because two people come from the union
19 and I ask why and he says, oh, because I agreed to it in the
20 agreement.  It seems a little odd, don't you think?
21             MR. GROSSO:  It isn't odd, your Honor, in that my
22 brother claims in his briefs that by signing the agreement, we
23 accept all the provisions, and we negotiated this.  There was
24 no negotiation.
25             THE COURT:  You don't have to sign.  Nobody put a

```
 1  gun to your client's head, right?
 2          MR. GROSSO: That's correct.
 3          THE COURT: So you signed it. That has a provision
 4  in there that says two come from one --
 5          MR. GROSSO: That's correct, your Honor.
 6          THE COURT: How about the two from management, maybe
 7  the union would think they're partial the other way?
 8          MR. GROSSO: I don't know, your Honor.
 9          THE COURT: Oh, yeah.
10          MR. GROSSO: I'm sure they, too, except in this
11  particular structure, the employer never wins so it's not an
12  issue.
13          THE COURT: Well, I'll tell you this: There's
14  really, except for the fact that they happen to have been
15  appointed by the union fully in accordance with the contract
16  that your client voluntarily agreed to, do you have any other
17  basis for alleging partiality?
18          MR. GROSSO: No, your Honor.
19          THE COURT: What was the decision here?
20          MR. GROSSO: The decision was that --
21          THE COURT: No, what was the vote?
22          MR. GROSSO: I think it was unanimous.
23          MR. FUSSELL: Unanimous.
24          THE COURT: So this isn't a situation where the
25  supposedly partial arbitrators, the people who tipped the
```

```
 1   scale and it's only because of those impartial people, if we
 2   ignore them, your client still losses, right?
 3            MR. GROSSO:  You would have an impasse.
 4            THE COURT:  If they abstained, it would be two zip,
 5   right?
 6            MR. GROSSO:  If they abstained, yes.
 7            THE COURT:  If they abstained because of their
 8   partiality.  This claim seems to not have much merit.  Am I
 9   missing something?
10            MR. GROSSO:  No, you are not missing anything, your
11   Honor.  My other claim, however, I think has some validity to
12   it.
13            THE COURT:  I always appreciate it when people --
14   actually they get credit with me when they tell me that their
15   claim has no merit because -- anyway, I think on this first
16   claim, unless you have some indicia that would show that
17   there's some fundamental failure of the justice system in
18   accordance with this contract, seems to me the fact that you
19   voluntarily agreed to it, the fact that it was never raised
20   below, the fact that your client lost even the
21   management-appointed votes in this case and the fact that
22   there's certainly nothing on the face of this that would
23   indicate partiality -- indeed am I right on this -- that the
24   arbitrators actually awarded less for the union than the union
25   requested?
```

```
 1              MR. GROSSO:  No, that's in a case that my brother
 2   cited, that's the Galco case that he cited.
 3              THE COURT:  So in this case -- I guess maybe it was
 4   for the other local.  Okay.  Anyway, they awarded exactly what
 5   the union had asked for?
 6              MR. GROSSO:  Correct, your Honor.
 7              THE COURT:  Okay.  So now exceeding their powers,
 8   let me get clarity here, you are not arguing manifest
 9   disregard of the law by the arbitrators, right?
10              MR. GROSSO:  No.
11              THE COURT:  It's exceeding their powers.  Now, on
12   exceeding their powers, don't you have to show that they
13   decided something, a subject, that was not tendered to them as
14   opposed to that they decided it wrongly?
15              MR. GROSSO:  Well, I can't argue that they decided
16   an issue that wasn't presented to them because the issue was
17   clearly presented to them.
18              THE COURT:  And that was what I gathered from what
19   little I have and if that's --
20              MR. GROSSO:  The union went in looking for money
21   damages for violation of the contract.
22              THE COURT:  Let me put it a different way:  The
23   union went in there looking for a remedy because of an alleged
24   breach and the arbitrators decided both the breach tendered to
25   them and the issue of remedy, right?
```

```
 1              MR. GROSSO:  That's correct.
 2              THE COURT:  There's certainly nothing in the
 3   collective bargaining agreement or in labor law that would
 4   prevent the panel from considering the subject of remedy once
 5   they find a breach, right?
 6              MR. GROSSO:  None whatsoever.
 7              THE COURT:  What you are really arguing is, while
 8   they had the issue of remedy properly before them, they
 9   imperfectly or erroneously adjudicated that because they
10   awarded a remedy when, as a matter of law, you say the union
11   wasn't entitled to a remedy, right?
12              MR. GROSSO:  That's correct, your Honor.
13              THE COURT:  Is that the province of a judge in
14   reviewing an arbitration decision?  I would have thought that
15   the whole beauty of the arbitration system is that you are
16   meant to go before arbitrators, the arbitrators may make the
17   incorrect decision both as a matter of fact or as a matter of
18   law but so long as they're not doing something against public
19   policy or something, that's what the parties bargained for and
20   I'm not supposed to second-guess their decision.
21              MR. GROSSO:  That is the "Reader's Digest" version
22   of the labor law.  My point is I'm not suggesting that they
23   made a decision on an issue of fact or law that was erroneous
24   but their awarding -- the whole remedy is a make whole remedy
25   and that the union -- this becomes a windfall of over $100,000
```

```
 1   to the union to pay people who are not trained who they don't
 2   have available to refer to my client to do this work.
 3           THE COURT:  I understand.  What you are really
 4   saying is the evidence in the record before the arbitrators
 5   wouldn't support this award, right?
 6           MR. GROSSO:  That's correct because he admitted he
 7   had nobody to give him.
 8           THE COURT:  But see, I'm hampered in a lot of ways
 9   because I don't have a record of the arbitration before me, I
10   don't have a stenographic record of testimony, I don't know
11   whether any briefs or prehearing or post hearing submissions
12   were submitted by the parties.
13           So the only way for me to adjudicate that question
14   now would be for me to recreate the arbitration here and see
15   maybe they do have some evidence to support them, and that's
16   just not what, I don't think what, exceeding their powers
17   review was meant to accomplish.
18           I think exceeding their powers is really designed to
19   deal with a situation where they're basically adjudicating
20   something that was never before them and they weren't asked to
21   decide, as opposed to deciding something wrongly that they did
22   have on their plate, and that's really your point.
23           MR. GROSSO:  Clearly, your Honor, I could not tell
24   you that it was not on their plate or that it wasn't submitted
25   to them.
```

```
 1            THE COURT:  You cited all these arbitration
 2   decisions which I actually read but those decisions kind of
 3   confirm that the issue of remedy really is a proper subject
 4   for the arbitrators; just that those arbitration panels went
 5   the way you think these people should have gone based on the
 6   evidence and this group didn't.
 7            MR. GROSSO:  That's correct, your Honor.
 8            THE COURT:  Okay.  But you are convinced that I
 9   would have the power to set this aside?  What would I do?  I
10   would remand it or something or I would just say, you know
11   what?  I don't have any record so I don't actually know what
12   the evidence is but, you know, Mr. Grosso seems like an honest
13   guy and take his word for it and I'll rule in favor of your
14   client?
15            MR. GROSSO:  No, your Honor.  I do think you have
16   the power to do one of two things, and I think it isn't based
17   on my integrity or honesty before you but we do have an
18   affidavit of my client which really is not controverted, my
19   brother gives a list of names of people out of work.  We never
20   suggested there were no people who were out of work.
21            It was, our claim was, that there was nobody
22   qualified to do this type of work that the union could refer
23   to him and in fact he had half of his work force were sheet
24   metal workers, they were his own trained employees that he
25   trained and really were fighting over the half of the work
```

```
 1   force that were represented by carpenter's union instead of
 2   the sheet metal workers union.
 3           You could, your Honor, because of that apparent
 4   dispute on the face of the affidavits, remand it for that
 5   issue only.  That issue only.  Whether or not --
 6           THE COURT:  I can remand to arbitrators --
 7           MR. GROSSO:  I think the federal court has that. . .
 8           THE COURT:  -- for further proceeding?  Do you have
 9   anything that gives me that authority?
10           MR. GROSSO:  You certainly have the authority to
11   vacate it.
12           THE COURT:  That I do.
13           MR. GROSSO:  I think intrinsic in that authority is
14   also the right to go back and finish it.
15           THE COURT:  You better check the case law.
16           Maybe I'll get your opponent up here.
17           Mr. Fussell, do you believe I have the authority to
18   remand further proceedings?
19           MR. FUSSELL:  No, your Honor, I do not know any case
20   law that supports that position.  You have the authority to
21   vacate or confirm the arbitration award.
22           THE COURT:  That's my understanding.
23           MR. FUSSELL:  I've been in a circumstance where the
24   case was vacated and the parties, because it was vacated, they
25   agreed to go back.
```

```
 1              THE COURT:  That's the choice.
 2              MR. FUSSELL:  That's the choice.  I don't know of
 3    any authority that the federal court has to send it back for
 4    remand.
 5              THE COURT:  I'm not aware of any authority, either,
 6    and I do a fair amount of these.
 7              Was the issue of whether there were qualified
 8    workers -- did or didn't have qualified workers -- and the
 9    damage, was that an issue explored at the arbitration, do you
10    know?
11              MR. FUSSELL:  Well, I've heard, you know, opposing
12    counsel's representation that it was.  When I asked my client
13    about that, he says it was not and the representation that's
14    made in my client's affidavit isn't just a representation that
15    these men were out of work; these are men that were qualified
16    and he says that in his affidavit, they were qualified to do
17    the siding work.  These are men who do siding work.
18              THE COURT:  What I didn't know from that affidavit
19    is whether that information was tendered to the arbitrators in
20    some way or he's now explaining this after the fact.
21              MR. FUSSELL:  No, it didn't.  In fact, one of the
22    issues that my client raised was the fact that MRS never even
23    called Local 38 for men, and that's something else that he's
24    put in his affidavit as well.
25              I didn't choose to really get into that because
```

```
 1  really we shouldn't be retrying the case, is what I think the
 2  point of the case law is.
 3          THE COURT:  Right.  Well, it would be difficult to
 4  retry the case without a transcript or record, in any event.
 5          MR. FUSSELL:  The parties could have chosen to have
 6  a transcript and they didn't.
 7          THE COURT:  So you want me to confirm it and you are
 8  looking for it to be confirmed along with additional relief?
 9          MR. FUSSELL:  The collective bargaining agreement
10  provides for that, if you were to confirm the arbitration or
11  collective bargaining agreement cited at the end, conclusion
12  of my brief, provides explicitly that attorney's fees would be
13  appropriate but I would leave that to the discretion of your
14  Honor.
15          THE COURT:  Well, you would have to file something.
16  This says in the event of a noncompliance within 30 days
17  following the decision, a party may enforce the award by any
18  means including proceedings in a court of competent
19  jurisdiction.  If the party seeking to enforce the award
20  prevails, such party shall be entitled to its costs and
21  attorney's fees in addition to such relief as is directed by
22  the courts.
23          So you would have to -- well, maybe you and your
24  opponent, if you were to prevail, could agree on a number.
25          Do you agree with your opponent that were I to rule
```

```
 1   in his favor, under the collective bargaining agreement, he
 2   would be entitled to attorney's fees and costs?
 3           MR. GROSSO:  Yes, I do, your Honor.  If you were to
 4   find for the defendant in this case, I would just want to
 5   review the hours and make sure they were fair and reasonable.
 6           THE COURT:  Maybe you guys could agree on it.
 7   Failing that, I could take a look at it.
 8           Do you have anything further, Mr. Grosso?
 9           MR. GROSSO:  Nothing, your Honor.
10           THE COURT:  I'm prepared actually -- I found this
11   argument helpful as I always do but I spent a lot of time on
12   these cases beforehand so I'm actually prepared to rule on the
13   pending summary judgment motions, and I will do so at this
14   time and this will be the only explanation of my decision you
15   will get.  I will issue a brief order confirming the actual
16   decision.
17           Let me just say that there are two arguments, and
18   only two arguments, to set aside the arbitrator's decision:
19   The first is that the decision of the arbitrator was --
20   arbitrators was -- based on a panel that was partial or
21   displayed evident partiality and the basis for that argument
22   is that two of the four, I guess it is, arbitrators were
23   appointed, in accordance with the union contract, to be union
24   representatives, and the plaintiff has agreed that there was
25   no objection lodged below to the composition of the panel.
```

```
 1          I'm going to reject that ground.  Clearly, evident
 2   partiality is a proper basis for setting aside an award but
 3   the Second Circuit has held that unless an objection to the
 4   partiality of arbitrators is raised at the arbitration
 5   hearing, it is waived.
 6          And for that I would cite the case of AAOT Foreign
 7   Economic Association Versus International Development and
 8   Trade Services, 139 F.3d 980 at page 982, a Second Circuit
 9   decision from 1998.
10          In addition, as the other parties have cited, that
11   decision is consistent with the law elsewhere, the First
12   Circuit in JCI Communications versus International Brotherhood
13   of Electrical Workers, 324 F.3d 42 at page 51.
14          And the Eighth Circuit's decision in Delta Mine
15   Holding Company versus AFC Coal Properties Inc, 280 F.3d 815
16   at 821.
17          Let me also say that the other reason I would rule,
18   in addition to waiver, is that the only basis for partiality
19   is not any matter of substance but rather the mere affiliation
20   of two of the four members of the panel.  The problem there is
21   actually the collective bargaining agreement calls for two of
22   the panel members to be from union representatives, two are
23   industry representatives, here the vote was four zero so it
24   wasn't like the union employees tipped the balance in any way,
25   indeed had they abstained because of a motion to abstain
```

```
 1   because of partiality the plaintiff still would have lost two
 2   zip so I don't see any basis in the record or otherwise for a
 3   finding of evident partiality.
 4           The second claim that the plaintiff makes is that
 5   the arbitrators exceeded their authority in the money damages
 6   that were awarded, and as the colloquy with counsel made
 7   clear, plaintiff's claim is not that the arbitrators didn't
 8   have before them the evidence of what remedy if any they
 9   should award; Mr. Grosso acknowledged or conceded that they
10   did have the evidence of breach before them but rather they
11   erred in the remedy they awarded because in his view there
12   wasn't evidence to support it.
13           I don't believe that that claim is consistent with
14   the very circumscribed law on the federal court's power to set
15   aside arbitration awards for when the arbitrators exceed their
16   powers.
17           In the case of Hoeft versus MVL Group 343 F.3d 57,
18   Second Circuit 2003, Judge Parker for the court went through
19   what the meaning of the exceeding the powers of the
20   arbitrators ground is and he says this: "An arbitrator
21   exceeds his powers when he ruled on issues not presented to
22   him by the parties."
23           Goes on to say that: This portion of the FAA on
24   exceeding powers "focuses on whether the arbitrator had the
25   power based on the parties' submission or the arbitrator's
```

1   agreement to reach a certain issue, not whether the arbitrator
2   correctly decided that issue."
3        He cites a bunch of cases for that. And Judge
4   Parker's decision in *Hoeft* is consistent with a long line of
5   cases both in the labor area and outside of the labor area.
6        Here it's quite clear that the real gravamen of the
7   plaintiff's claim is that they incorrectly decided the issue,
8   not that they reached an issue that the parties had not
9   tendered to them and therefore, I don't find a proper basis
10  under the exceeding the powers of the arbitrators to set aside
11  the arbitration award.
12       I would also say it would be impossible for me to
13  consider the merits of the plaintiff's argument about whether
14  or not the arbitrators correctly decided the issue of remedy
15  because I don't even have a record before me, there's no
16  transcript of the testimony, or submissions before the
17  arbitration panel.
18       While I do have an affidavit from the plaintiff's
19  representative regarding what he believed the state of the
20  evidence was, I have a counteraffidavit from the defendant,
21  there's really no way for me to resolve that dispute which is
22  frankly why the Second Circuit and U.S. Supreme Court wisely
23  said that when parties bargain for arbitration, they've
24  bargained for very, very circumscribed court review of the
25  arbitrator's decision.

```
 1          Once I conclude that the arbitrator had the power to
 2   decide a particular issue, in this case remedies, my job is at
 3   an end and it's not my job to consider whether or not they got
 4   it right when they resolved that issue.
 5          So I will reject both of the grounds on which the
 6   plaintiff has sought to set aside the arbitration award.
 7   Let's see.  I will deny the plaintiff's motion for summary
 8   judgment and I'm not sure what number that is right now and I
 9   will grant the plaintiff's motion for summary judgment and
10   confirm the arbitrator's award in the amount awarded, I will
11   also award in accordance with the arbitration agreement which
12   is attached as Exhibit A, I will award attorney's fees to the
13   defendant and the defendant has ten days from today to either
14   submit to me a stipulated amount of costs and attorney's fees
15   which I can just enter as part of the judgment --
16          Oh, I'm sorry, just to be clear here, since
17   apparently I've confused everybody but myself, the plaintiff's
18   motion for summary judgment is denied, the defendant's motion,
19   cross-motion, for summary judgment is granted and the award is
20   confirmed and I grant the defendant's request for attorney's
21   fees and costs and I award them.
22          The amount of the award, though, will be determined
23   in the future and I expect the parties to consult with one
24   another and either to file a stipulation within ten days as
25   the amount to be included in the judgment or failing
```

```
 1   agreement, the defendant at that point must submit affidavits
 2   and other, and a brief in support of an award of fees, and
 3   I'll make that decision at that point, okay?  Anything
 4   further?  Okay.
 5              (2:32 o'clock p.m.)
 6
 7
 8
 9
10
11
12
13
14
15
16         COURT REPORTER'S TRANSCRIPT CERTIFICATE
17
18        I hereby certify that the within
19     and foregoing is a true and correct transcript
20     taken from the proceedings in the above-entitled
21     matter.
22
23                            _____
24                            Official Court Reporter
25   Dated: _____
```